**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| HIP, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 21-546-CFC |
| v. | ) |
| | ) |
| HORMEL FOODS CORPORATION, | ) |
| | ) |
| Defendant. | ) |

<u>**HORMEL'S MOTION TO REVIEW TAXATION OF COSTS**</u>

Pursuant to Federal Rule of Civil Procedure 54(d)(1) and Local Rule

54.1(d), Defendant Hormel Foods Corporation ("Hormel") respectfully moves this

Court to review the Clerk's Taxation of Costs (D.I. 75) and to award Hormel a

total of **$48,057.37** in costs requested in its Bill of Costs (D.I. 70-72).

**I.     INTRODUCTION**

Hormel defeated Plaintiff HIP, Inc.'s correction of inventorship claims, which

required over five years of proceedings including depositions, multiple hearings, a

bench trial, and appeals to the Federal Circuit and U.S. Supreme Court.  *See, e.g.*,

D.I. 53, 55, 69.  Hormel accordingly filed a Bill of Costs seeking taxable costs of

$51,360.03—a fraction of the total costs Hormel incurred.  D.I. 70-72.  The Clerk,

however, taxed only the costs to which HIP did not object in the amount of

$3,604.38.  D.I. 75.  In doing so, the Clerk denied all recovery for trial transcript and

deposition costs and refused to tax any costs for exemplification, including those

required for trial presentation—all categories of costs that courts in this District have regularly taxed. The Clerk, moreover, applied the incorrect standard to Hormel's deposition costs. *Id.* at 2-3.

Further, the Clerk referred any legal disputes to the Court, stating that "[a]ny resolution of a dispute regarding whether costs were 'necessarily incurred,' and therefore taxable under 28 U.S.C. § 1920, is a discretionary matter for resolution by the Court." *Id.* at 2. Likewise, the Clerk left to the Court decisions about the applicability of case law. *Id.*

Hormel respectfully requests that the Court review and amend the taxation of costs as detailed below.

## II.    **BACKGROUND**

Hormel owns U.S. Patent No. 9,980,498 (the "'498 Patent") titled "Hybrid Bacon Cooking System." D.I. 1. HIP filed an action for correction of inventorship claiming its president, David Howard, was the sole or joint inventor of Hormel's patent. *HIP, Inc. v. Hormel Foods Corp. et al.*, C.A. No. 18-cv-802, D.I. 1 (D. Del. May 29, 2018) (hereinafter, the "First Action"). The parties extensively litigated the First Action until just before trial. The Court then ordered jurisdictional discovery to assess whether HIP could maintain the First Action given standing deficiencies raised by Hormel in a motion to dismiss. *Id.*, D.I. 151 (Apr. 6, 2021). Rather than engage in discovery, HIP informed the Court on April 15, 2021, that it would file a

new action "asserting the same correction of inventorship and ownership claims asserted in [the First] action, and intends to seek consolidation of the two actions so that they can proceed to trial on the merits." *Id.*, D.I. 153 (Apr. 15, 2021).[1]

HIP filed its complaint in the present action that same day, asserting the same inventorship claims. D.I. 1 (the "Second Action"). The Court held a bench trial from March 1-4, 2022, and continued on March 15, 2022. D.I. 53. Witnesses called live at trial included Hormel's inventors Brian Srsen, Brian Hendrickson, James Mino, and expert Ramesh Gunawardena, and HIP's witnesses David Howard and Deacon Turner. The parties also played video depositions of HIP's witnesses Thomas Van Doorn and Craig Bernheimer. The Court entered judgment in Hormel's favor on HIP's sole inventorship claim during trial, concluding Mr. Howard was not a sole inventor. D.I. 53. The Court entered judgment for HIP on its joint inventorship claim following additional closing argument. D.I. 53.

Hormel appealed the ruling on joint inventorship and the Federal Circuit reversed, concluding that Mr. Howard had not made a significant contribution to the

---

[1] In June 2021, HIP filed a Motion to Dismiss the First Action without prejudice under Rule 41(a)(2). *Id.*, D.I. 161. Hormel opposed and requested that the Court condition its dismissal on HIP's reimbursement of Hormel's attorneys' fees and costs that were attributable to the standing dispute, given HIP's gamesmanship and ever-changing story on standing. *Id.*, D.I. 164 (July 8, 2021). The Court has scheduled a teleconference on that outstanding motion for May 7, 2024.

conception of Hormel's invention.  D.I. 55; D.I. 69; D.I. 69-1.[2]  The Federal Circuit

denied HIP's petition for panel rehearing and en banc review.  Accordingly, the

mandate issued on July 5, 2023.  D.I. 69.  The U.S. Supreme Court later denied HIP's

last-ditch petition for a writ of certiorari.

On September 1, 2023, Hormel timely filed its Bill of Costs, well-supported

by authorities, facts, the Declaration of Barbara Marchevsky ("Marchevsky

Declaration") and the exhibits thereto.  D.I. 70-72.  HIP filed objections.  D.I. 73.

On April 10, 2024, the Clerk taxed costs in the amount of $3,604.38, only awarding

the costs to which HIP did not object.  D.I. 75.

## III.   LEGAL STANDARD

A district court reviews *de novo* a clerk's taxation of costs.  *See In re Paoli*

*R.R. Yard PCB Litigation*, 221 F.3d 449, 461 (3rd Cir. 2000).  Rule 54(d)(1) of the

Federal Rules of Civil Procedure instructs that "costs… should be allowed to the

prevailing party."  Local Rule 54.1 similarly states that "[u]nless otherwise ordered

by the Court, the prevailing party shall be entitled to costs."  L.R. 54.1(a)(1).  Taken

together, 28 U.S.C. § 1920, Federal Rule of Civil Procedure 54, and Local Rule 54.1

create a "strong presumption" that costs should be awarded to the prevailing party.

---

[2] HIP initially filed a notice of cross-appeal on the sole inventorship claim, which it
later terminated.  D.I. 64; D.I. 67.

*See Reger v. The Nemours Found., Inc.*, 599 F.3d 285, 288 (3rd Cir. 2010).  In fact,

the denial of such costs "is akin to a penalty."  *Id.*

Categories of recoverable costs are outlined in 28 U.S.C. § 1920.  Local Rule

54.1 is informative, but the "the court retains the discretion to award costs beyond

the limitations of Local Rule 54.1 to the fullest extent permissible under § 1920."

*Bethea v. Rash*, C.A. No. 11-1045, 2015 WL 4477693, at *2 (D. Del. July 22, 2015).

## IV.   HORMEL TIMELY SOUGHT ITS COSTS AS THE PREVAILING PARTY.

There is no dispute that Hormel is the prevailing party and timely sought its

costs.  *See* D.I. 75 at 1 (explaining "HIP does not dispute that Hormel is the

prevailing party" and finding Hormel's bill of costs "timely").

## IV.   HORMEL SHOULD BE AWARDED ITS REQUESTED TAXABLE COSTS.

Hormel seeks **$48,057.37** in total taxable costs as detailed below.

### A.    Trial Transcript Costs

Hormel requests **$8,416.78** for the costs of obtaining transcripts for the bench

trial and related hearings, as set forth in further detail in Hormel's Memorandum

supporting its Bill of Costs (D.I. 71 at 9-12), the Marchevsky Declaration (D.I. 72,

¶ 4), and Exhibit B thereto (D.I. 72-01).[3]  Such costs are authorized by 28 U.S.C.

---

[3] Hormel's submissions outline the specific transcript costs sought, including the
applicable per-page rates.  The submission also explains the necessity for expedited

§ 1920(2) (listing "fees for printed or electronically recorded transcripts necessarily obtained for use in the case"). The Clerk rejected Hormel's trial transcript costs in full under Local Rule 54.1(b)(2) as not requested by the Court or prepared pursuant to a stipulation. D.I. 75 at 2-3. Nevertheless, the Clerk reserved for the Court the discretionary issue of whether these costs should be taxed under Section 1920. *Id.*

The Court may exercise its discretion to award taxable costs for transcripts necessarily obtained for use in the case. Under this standard, courts in this District commonly award trial transcript costs. *See, e.g.*, *Hologic, Inc. v. Minerva Surgical, Inc.*, C.A. No. 15-1031-JFB, 2023 WL 2655508, at *1 (D. Del. Mar. 27, 2023) (taxing such costs given the "readily apparent" utility of transcripts in complex litigation where "daily copies prove particularly useful at trial for cross examination and impeachment"); *Intell. Ventures I LLC v. Symantec Corp.*, C.A. No. 10-1067-LPS, 2019 WL 1332356, at *3 (D. Del. Mar. 25, 2019) (awarding such costs because "[a]t any point, the parties and/or the Court may have needed these transcripts to… identify and resolve issues or refresh recollection as to matters that had been previously addressed"); *Sanofi v. Glenmark Pharms., Inc. USA*, C.A. No. 14-264-RGA, 2018 WL 6427870, at *2 (D. Del. Dec. 7, 2018) (taxing trial transcript costs);

---

processing of the Pretrial Transcript and the real-time feed during the bench trial, which HIP did not challenge. *See* D.I. 71 at 11-12; D.I. 72, ¶ 4; D.I. 73.

*Walker Digital, LLC v. Google, Inc.*, C.A. No. 11-318-LPS, 2016 WL 1553974, at *6 (D. Del. Apr. 12, 2016) (same).

### 1.    Transcripts Were Necessary for Witness Examination.

Here, daily trial transcripts were necessary to adequately direct and cross examine witnesses in the four-day trial and were relied on at trial to facilitate entering exhibits into evidence.  D.I. 71 at 5-6; D.I. 72, ¶ 4.

### 2.    Transcripts Were Necessary for Hormel's Motion for Judgment on Partial Findings and the Parties' Closing Arguments.

The transcripts were also utilized mid-trial during argument on Hormel's Motion for Judgment on Partial Findings pursuant to Federal Rule of Civil Procedure 52(c) and were necessary to prepare a full closing argument on the final day of trial. D.I. 71 at 5-6; D.I. 72, ¶ 4; *see Symantec Corp.*, 2019 WL 1332356, at *3 (explaining transcripts are "almost certainly necessary" for "arguing motions for judgment as a matter of law" and "during closing argument").  For example, both parties heavily relied on the trial testimony of Hormel's lead inventor Brian Srsen and HIP's President David Howard in their closing arguments.

### 3.    Transcripts Were Necessary for the Court to Make Rulings During Trial and for Appeal.

In addition, it is necessary to the orderly progression of a bench trial for the parties to know what, exactly, the Court ordered, especially here where the Court's findings and rulings were incorporated into the trial transcripts.  Here, the transcripts

were relied on by the parties and the Court throughout the trial, including for the Court to make rulings during trial and render judgment from the bench on both of HIP's claims. *See* D.I. 71 at 5-6. The Court cited to pages of the rough trial transcript including testimony from Messrs. Srsen, Howard, Gunawardena, and Van Doorn.

Because the Court read its findings of fact and conclusions of law into the record (*see* D.I. 53), the trial transcripts were also unquestionably necessary for appeal: Federal Rule of Appellate Procedure 10 requires a transcript of the proceedings. *See Onyx Therapeutics, Inc. v. Cipla Ltd. & Cipla USA Inc.*, C.A. No. 16-988-GBW, 2023 WL 2072389, at *3 (D. Del. Feb. 17, 2023) (taxing transcript costs where a "pretrial transcript was reasonably necessary to effectively litigate this case, and since a trial transcript was reasonably necessary for appeal").

Hormel respectfully requests that the Court award Hormel its trial transcript costs of $8,416.78 as necessarily incurred under Section 1920.

## B.    Deposition Costs

Hormel also seeks **$15,829.21** in taxable costs that it necessarily and reasonably incurred for ten depositions of seven witnesses in this case. These costs are outlined in Hormel's Memorandum supporting its Bill of Costs (D.I. 71 at 12-15), the Marchevsky Declaration (D.I. 72, ¶ 4), and Exhibit B thereto (D.I. 72-01).[4]

---

[4] Hormel's submissions detail the specific deposition transcript costs sought, including the applicable per-page rates.

### 1.    The Clerk Applied the Incorrect Standard to Hormel's Deposition Costs.

The Clerk denied Hormel's request for deposition costs in full and appeared to mistakenly require that deposition transcripts too be "requested by the Court" or "prepared pursuant to stipulation." D.I. 75 at 3. That is not the correct standard.

Local Rule 54.1(b)(3) states that costs "for the original and one copy of a deposition and the reasonable cost of taking a deposition electronically or magnetically recorded are taxable only where a substantial portion of the deposition is used in the resolution of a material issue in the case." The Clerk did not address whether Hormel's requested costs involved "a substantial portion of the deposition [] used in the resolution of a material issue in the case." *See* D.I. 75.

Moreover, Section 1920 more broadly allows taxation of transcript costs that are "necessarily obtained for use in the case." 28 U.S.C. § 1920(2); *Tabron v. Grace*, 6 F.3d 147, 160 n.9 (3rd Cir. 1993) ("[D]eposition expenses… may be awarded as costs to the prevailing party if the court determines… that the copies were of papers necessary for use in the case."). And, as discussed above, the Court has "discretion to award costs beyond the limitations of Local Rule 54.1 to the fullest extent permissible under § 1920." *Cloud Farm Assocs., L.P v. Volkswagen Grp. of Am., Inc.*, C.A. No. 10-502-LPS, 2018 WL 4603264, at *3 (D. Del. Sept. 25, 2018). The Clerk deferred to the Court on whether any costs were "necessarily incurred" under Section 1920. D.I. 75 at 3.

9

### 2.   Deposition Transcripts Were Necessarily and Substantially Used to Resolve Material Issues in the Case.

"Deposition transcripts are used throughout a patent case for many purposes, including to identify and resolve disputes relating to discovery and to brief and argue motions (e.g., challenging the admission of expert testimony, for summary judgment, *in limine*, and miscellaneous issues that arise in connection with preparation of the pretrial order)." *Walker Digital*, 2016 WL 1553974, at *4. "They are also used, often in video form, at trial." *Id.*

Here, Hormel seeks costs involving depositions where a substantial portion of the transcript was used in resolving a material issue in the case, or at a minimum were necessarily incurred for use in the case. Hormel's costs include those related to the provision of one original and one copy of ten deposition transcripts, as well as deposition-related costs. Each deposition involved a witness who testified at trial live or by video deposition designation. D.I. 70 at 12-13; D.I. 72, ¶ 4. Accordingly, the transcripts were necessarily and substantially used in preparation for trial, aided in the resolution of material issues, were necessary for potential impeachment, and allowed for the efficient use of testimony during the Court's bench trial.

Specifically, as Hormel previously detailed (*see* D.I. 71 at 12-15; D.I. 72, ¶ 4), the depositions of Mr. Bernheimer and Mr. Van Doorn were substantially and necessarily used because these witnesses testified by deposition at trial. The parties played approximately 15 minutes of Mr. Bernheimer's deposition and 45 minutes of

Mr. Van Doorn's deposition, and provided the Court with more than 25 pages of Mr. Van Doorn's additional testimony for review that was not videotaped.

The remaining eight depositions—the three depositions of Mr. Howard as a Rule 26(a)(C) witness and corporate representative, the deposition of Mr. Gunawardena as Hormel's expert, and the depositions of Hormel witnesses Messrs. Srsen, Hendrickson, and Mino— were submitted to the Court in the parties' *Daubert* and motion *in limine* briefing or were included in the parties' pre-trial deposition designations. *See* D.I. 28-1 (Mr. Howard's testimony submitted with Hormel's *Daubert* motion to exclude his hybrid lay-expert witness testimony); D.I. 30-2 (Mr. Howard's testimony submitted with *Daubert* briefing); D.I. 33-1 (Mr. Gunawardena's testimony submitted with *Daubert* briefing); D.I. 37-1 (same); D.I. 42-1 at 80-129, 373-75, 409-22 (including deposition designations for these depositions excepting Mr. Gunawardena's; submitting Messrs. Gunawardena's, Hendrickson's, Srsen's, and Mino's depositions with motion *in limine* briefing); *see also Onyx Therapeutics*, 2023 WL 2072389, at *3 (taxing deposition transcript costs "necessarily obtained for use in the case" even if the deposed witness never testified at trial); *Trend Micro Inc.*, 2020 WL 1245125, at *5 (concluding depositions were reasonably necessary when cited in the parties' submission and would have been necessary for trial); *Cloud Farm Assocs.*, 2018 WL 4603264, at *3 (awarding

deposition costs that were reasonable and necessary in a patent case for "an effective defense of this matter").

### 3.       Deposition-Related Costs Were Necessary.

Hormel's Bill of Costs also seeks taxable deposition-related costs. For example, Hormel requests real-time fees for the depositions of Hormel's corporate witness Mr. Srsen and HIP witnesses Messrs. Van Doorn and Howard, which were reasonably necessary to defend or take these highly technical depositions. *See Trend Micro Inc.*, 2020 WL 1245125, at *5 (finding that "rough drafts, 'real time' feeds… and the other add-ons were reasonably necessary"). Hormel also seeks other deposition-related costs found taxable in this District, including exhibit and video charges. *See Symantec Corp.*, 2019 WL 1332356, at *3 (taxing "other deposition-related costs, including production of exhibits (necessary to make the deposition transcripts useable and understandable), video charges (necessary in anticipation of use of depositions before Court and/or jury), and adding transcription as subtitles to videos (i.e., video synchronization, which is necessary for same anticipated purposes as video)").

As to deposition videos, Hormel seeks the costs associated with two HIP witnesses whose depositions were played at trial (Messrs. Bernheimer and Van Doorn). *See, e.g.*, *Walker Digital*, 2016 WL 1553974, at *4 (recognizing deposition videos as reasonable and necessary as they are often used at trial in patent cases).

Hormel also seeks video costs for the five depositions taken by HIP in this case, each of which were noticed as video depositions by HIP.  Courts in the Third Circuit have recognized that "videotaping costs [may be taxed] against the losing party when that party noticed the depositions as video depositions.  Inherent in the losing party's notice is the presumption by that party that the videos would be necessary and it would be inequitable to require the prevailing party to dispute such charges just because the videos were not played at trial." *Purdue Pharm. Prods., L.P. v. Actavis Elizabeth LLC*, No. 12-5311(JLL), 2016 WL 3450809, at *8 (D.N.J. June 20, 2016).

In total, Hormel respectfully requests that the Court tax $15,829.21 in taxable deposition costs.

## C.    Exemplification Costs

Hormel requests **$20,207.00** in exemplification costs, including applying exhibit stamps to files for trial, creating deposition video clips to be presented at trial, and producing graphics to be presented at trial.[5]  These costs are further detailed in Hormel's Memorandum supporting its Bill of Costs (D.I. 71 at 18), the Marchevsky Declaration (D.I. 72, ¶ 6), and Exhibit D thereto (D.I. 72-01).  The Clerk

---

[5] Hormel excluded from its graphics costs any costs related to "Trial Consulting, Strategy, and Design Direction" and "Technology Consulting & Presentation."  D.I. 71 at 18.  Hormel only seeks graphics costs related to the creation of graphics that were presented at trial.

denied these costs because Hormel's request involved assessing the applicability of case law, which the Clerk left "for resolution by the Court."  D.I. 75 at 4-5.

Section 1920 allows taxation of "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case."  28 U.S.C. § 1920(4).  Hormel's requested exemplification costs involve the conversion of electronic documents to the proper format for use at trial—the types of costs courts in this District have taxed under Section 1920(4).  *See, e.g.*, *Honeywell Int'l, Inc. v. Nokia Corp.*, C.A. No. 04-1337-LPS, 2014 WL 2568041, at *10 (D. Del. May 30, 2014) (taxing exemplification costs for preparing trial exhibits).  For example, the cost of applying exhibit stamps to files for trial, in accordance with applicable pre-trial deadlines, is a common exemplification cost. *Cf. Sanofi*, 2018 WL 6427870, at *2 (explaining costs associated with Bates-stamping documents may be taxable); *In re Ricoh Co. Patent Litig.*, 661 F.3d 1361, 1367 (Fed. Cir. 2011) (stating Section 1920(4) "does not require, however, that the copies actually be used in the case or made part of the record").

Likewise, costs for creating deposition video clips to be played at trial and producing graphics for trial are taxable in the court's discretion.  *See, e.g.*, *Trend Micro Inc.*, 2020 WL 1245125, at *4 (awarding costs for preparing video clips into a format that could be "readily presented at trial" and preparing slides for a Markman hearing); *Honeywell*, 2014 WL 2568041, at *10 (awarding costs for preparing "trial

14

demonstrative exhibits"). Hormel was required to prepare its exhibits and video testimony into a format that could be readily presented at trial to the Court, and the video clips of witness testimony were necessary to streamline the presentation of evidence at trial. Further, the creation of deposition video clips and trial graphics are not associated with the "intellectual effort" of counsel, but rather costs directly attributable to reducing counsels' effort into visual form for use at trial. *See, e.g.*, *Intell. Ventures I LLC v. Symantec Corp.*, C.A. No. 13-440-LPS, 2019 WL 4751536, at \*3 (D. Del. Sept. 30, 2019) (taxing "direct non-attorney costs related to preparation of tutorial and hearing demonstratives"); *Walker Digital*, 2016 WL 1553974, at \*4-5 (taxing costs for the "production" of a demonstrative presentation, including "reducing counsel's intellectual effort" into the requested format).

Hormel accordingly respectfully requests taxation of its exemplification costs in the amount of $20,207.00.

### D.     Fees of the Clerk and Witness, Appellate, and Copying Costs

Hormel also sought fees in its Bill of Costs to which HIP did not object, including **$505.00** in fees paid to the Clerk and **$3,099.38** in witness fees. D.I. 70; D.I. 73. The Clerk taxed Hormel's fees of the Clerk and witness fees in the full amount requested (D.I. 75 at 2-4), and this Court should do the same.

In addition, Hormel sought $772.80 in costs as shown on the Mandate from the Federal Circuit (D.I. 70), to which HIP did not object. The Clerk determined

that because these costs were previously taxed by the Federal Circuit, Hormel's request was moot.  D.I. 75 at 5.  Hormel does not seek review of this decision, as it is already owed these costs.  Hormel also does not seek review of the Clerk's denial of its copying costs.

WHEREFORE, Hormel respectfully requests that the Court grant its Bill of Costs in the total amount of **$48,057.37** as follows: (1) **$8,416.78** in trial transcript costs; (2) **$15,829.21** in deposition costs; (3) **$20,207.00** in exemplification costs; (4) **$505.00** in fees of the clerk; and (5) $**3,099.38** in witness fees.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | POTTER ANDERSON & CORROON LLP |
| OF COUNSEL: | By: */s/ Bindu A. Palapura*  |
|  | David E. Moore (#3983) |
| Kurt J. Niederluecke | Bindu A. Palapura (#5370) |
| Timothy M. O'Shea | Hercules Plaza, 6th Floor |
| Barbara Marchevsky | 1313 N. Market Street |
| FREDRIKSON & BYRON P.A. | Wilmington, DE  19801 |
| 60 South 6th Street, Suite 1500 | Tel:  (302) 984-6000 |
| Minneapolis, MN  55402-4400 | dmoore@potteranderson.com |
| Tel:  (612) 492-7000 | bpalapura@potteranderson.com |
|  |  |
| Dated:  April 16, 2024 | *Attorneys for Defendant Hormel Foods* |
| 11448482 / 19101.00002 | *Corporation* |

16